IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| VALDERIE C. ABRAMSEN, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MIKE JOHANNS, IN HIS | : | |
| OFFICIAL CAPACITY AS | : | |
| SECRETARY OF AGRICULTURE | : | |
| OF THE UNITED STATES OF | : | |
| AMERICA, et al. | : | NO. 07-31 |

MEMORANDUM

Bartle, C.J.                                           April 16, 2010

         This is an employment discrimination action under Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. and § 2000e, et seq. The plaintiffs claim the defendants, the United States Department of Agriculture ("USDA") and Mike Johanns in his official capacity as Secretary of Agriculture, unlawfully refused to hire them as dual government appointees in the excepted service with the USDA and deprived them of participation in numerous federal employment benefit programs because of their African/Caribbean origin.

         Now pending before the court are: (1) the motion of the defendants to dismiss the plaintiffs' amended complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure[1]; (2) the motion of the plaintiffs to file a second amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure for the District of the Virgin Islands; and (3) the supplemental motion of the defendants to join the University of the Virgin Islands ("UVI") as a party pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.

I.

The following facts, which include facts presented to the court outside of the pleadings, are viewed, where appropriate, in the light most favorable to the non-moving party.

Plaintiffs are of African/Caribbean origin. They are current and former employees of the University of the Virgin Islands, Cooperative Extension Service ("UVI-CES").

The UVI is a land-grant university established under the First Morrill Act of 1862, 7 U.S.C. § 301, et seq.[2] Pursuant

---

1. The defendants have incorrectly denominated their motion as one to dismiss for failure to state a claim. Since they have filed an answer, their motion is properly a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c).

2. The Act was officially titled "An Act Donating Public Lands to the Several States and Territories which may provide Colleges for the Benefit of Agriculture and the Mechanic Arts." Only States that remained in the Union during the Civil War received the grant of land. In 1890, the Second Morrill Act was passed. It provided additional endowments for land-grant colleges but refused aid to "any State or Territory for the support or maintenance of a college where a distinction of race or color is made in the admission of students[.]" 7 U.S.C. § 323. States that provided for the establishment of separate colleges for African-American students and equitably divided the funds
(continued...)

thereto, the federal government granted 30,000 acres of federal land to each state, which was then expected to sell the land and place the proceeds of such sale in an endowment.  7 U.S.C. § 301.  Alternatively, the states could receive scrip in lieu of land.  The income from the investment of the proceeds was used by the states for the "endowment, support, and maintenance of at least one college where the leading object shall be [...] to teach such branches of learning as are related to agriculture and the mechanic arts, in such manner as the legislatures of the states may respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life."  7 U.S.C. § 304.  Rather than public land or script, $3,000,000 was appropriated for the Virgin Islands.  The First Morrill Act, as amended, Pub. L. No. 92-318, Title V, § 506(b), 86 Stat. 350 (1972).

In 1914, the Smith-Lever Act, 7 U.S.C. § 341, et seq., was enacted to provide for agricultural extension work at the colleges and universities receiving funds under the First Morrill Act.  The Smith-Lever Act sought to diffuse "among the people of the United States useful and practical information on subjects relating to agriculture, uses of solar energy with respect to agriculture, home economics, and rural energy, and to encourage the application of the same[.]"  7 U.S.C. § 341.  Under these statutes, land grant universities or colleges, including the UVI,

---

2.(...continued)
received would be in compliance with the Second Morrill Act.  Id.

provide instruction in agriculture and the mechanic arts and diffuse this knowledge through cooperative extension work.

As a land-grant university, the UVI is eligible to receive funds pursuant to the Smith-Lever Act, 7 U.S.C. § 341, et seq., and the National Agriculture Research, Extension, and Teaching Policy Act of 1977, Pub. L. No. 95-113, § 1401, 91 Stat. 913 (1977). The USDA and its agency, the Cooperative State Research, Education, and Extension Service ("USDA-CSREES"),[3] are authorized to administer federal funds appropriated under the Smith-Lever Act to land-grant colleges and universities to assist them in operating State Cooperative Extension Service Programs. The USDA entered into Memoranda of Understanding or Cooperative Agreements with land-grant universities, including the UVI, in order to ensure the economic and efficient conduct of extension efforts in the Virgin Islands. In accordance with these agreements, the UVI contracted to organize and maintain an administrative division to manage and conduct all cooperative extension work in agriculture and home economics. This division is known as the UVI-CES. The Director of the UVI-CES was selected by the UVI and approved by the USDA. In 1976, Dr. Darshan Padda was selected by the President of the UVI for the position of Director of the UVI-CES. In June, 1976, the Secretary of Agriculture approved Dr. Padda's appointment.

---

3. The USDA-CSREES is now known as the National Institute of Food and Agriculture.

Personnel performing work under the Cooperative Agreement between the USDA and UVI were eligible for "Cooperative Appointments" pursuant to the Smith-Lever Act, the basic Memoranda of Understanding, and Schedule A, § 213.3113(a)(1) of the regulations issued by the Office of Personnel Management ("OPM"). Schedule A Cooperative Appointments were "Excepted Appointments" in that the person holding such appointment was excepted from competitive civil service requirements. The OPM, which had the authority and responsibility for issuing rules and regulations covering Schedule A Cooperative Appointments and benefits, granted the Schedule A appointment authority to the USDA to appoint and employ individuals in the CES. In the Memorandum of Understanding, the USDA delegated the Schedule A appointment authority to the Director of the UVI-CES.

Schedule A Cooperative Appointments are joint appointments between the USDA and the UVI-CES. As a prerequisite, a person must have an appointment in the university cooperative extension organization. Thus, the "Federal appointment may not exist without the companion university appointment." Administrative Handbook for Cooperative Extension Work, Ch. IV, p. IV-3 (December 1985). CES employees that received Schedule A Cooperative Appointments were eligible to participate in federal benefits programs, including the Civil Service Retirement Program, the Federal Employee Retirement System, the Federal Employees' Group Life Insurance Program, the

Federal Employees Health Benefits Program, the Federal Long Term Care Insurance Program, and the Thrift Savings Plan.

During Dr. Padda's tenure, nine Schedule A Cooperative Appointments were made. Kwame Garcia replaced Dr. Padda as Director of UVI-CES in March, 1997. Garcia was never informed of the Cooperative Appointments prior to becoming Director. On June 8, 1998, Garcia requested that the USDA-CSREES permit the UVI-CES to participate in the federal retirement system and the Schedule A Cooperative Appointment program. Since Garcia never received a Schedule A Cooperative Appointment and was thus not a federal officer, he lacked the authority to make Schedule A Cooperative Appointments once he became Director of UVI-CES. On March 18, 1999, the USDA, citing an ongoing project to revise the CES employment manual, denied Garcia's request. It explained that this project could have an impact on the CES Federal Appointees throughout the country and agreed to revisit the request once the project was completed.

Garcia attests that had he received a Cooperative Appointment and the authority to make such appointments, he would have informed all eligible UVI-CES employees of the existence of the program and would have granted such appointments to all eligible employees.

The authority to grant Schedule A Cooperative Appointments to CES employees was terminated on January 31, 2003 pursuant to the Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, § 7220 (2002). Employees holding a Schedule

A Cooperative Appointment on the day before the enactment of the Act were permitted to continue to participate in federal benefits programs as long as they continued their employment with their respective Cooperative Extension Service.

In 2005, plaintiffs filed administrative complaints with the Office of Civil Rights for the USDA. They asserted the USDA discriminated against them in the "employment process" on the basis of their race, color, ethnicity, and place of origin because it failed to notify them of their eligibility for Schedule A Cooperative Appointments and the corresponding federal benefits appurtenant thereto. In 2006, the Chief of the Employment Complaints Division of the USDA referred the complaints to the Program Complaints Division in light of the determination of the Employment Complaints Division that the plaintiffs were not federal employees or applicants for federal employment and were not protected under Title VII of the Civil Rights Act.

The Program Complaints Division of the Office of Civil Rights, which is responsible for processing complaints of program discrimination filed against the USDA or a recipient of Federal financial assistance from the USDA, accepted jurisdiction of plaintiffs' complaints. A letter from Kenneth Baisden, Chief of the Program Complaints Division informed plaintiffs' counsel that the USDA-CSREES would prepare a position statement providing facts and explanatory material for the events, decisions or actions alleged in the complaints. Following receipt of that

statement, an investigation was to have been completed and a Final Agency Decision issued. These administrative Title VI claims were closed once civil litigation commenced in March, 2007.

As noted above, plaintiffs contend the defendants unlawfully discriminated against them on the basis of their African/Caribbean origin, in violation of Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. and § 2000e, et seq. Plaintiffs' first amended complaint also contained a claim for relief for breach of contract.

II.

We first consider plaintiffs' motion to file a second amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure of the District Court of the Virgin Islands. Plaintiffs may not amend their first amended complaint as a matter of course under Rule 15(a)(1). Thus, they seek leave of court to do so pursuant to Rule 15(a)(2). Subsection (a)(2) states that the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons for denying a plaintiff's request for leave to amend a complaint include prejudice to the nonmoving party, undue dely, bad faith or dilatory motive, and futility. Foman v. Davis, 371 U.S. 178, 182 (1962).

Defendants oppose the motion of the plaintiffs to amend on futility grounds. Our court of appeals has explained that

futility means "that the complaint, as amended, would fail to state a claim upon which relief could be granted."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  We must apply the 12(b)(6) standard for legal sufficiency when determining whether to deny leave to amend a complaint on futility grounds.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint, draw all inferences from the facts alleged in the light most favorable to the plaintiff, and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  Our Court of Appeals has characterized the Supreme Court's "formulation of the pleading standard" for stating a claim as requiring "'a complaint with enough factual matter (taken as true) to suggest' the required element."  Phillips, 515 F.3d at 234.  When ruling on a motion to dismiss, we consider the facts alleged in the complaint "and the documents on which the claims made therein were based."  In re Burlington Coat Factory, 114 F.3d at 1425.

Amendment of a complaint may be futile for failure to exhaust administrative remedies.  Discenza v. Hill, 221 Fed. App'x 109, 111 (3d Cir. 2007).  Issues as to whether a plaintiff has timely exhausted or completely exhausted administrative

remedies in Title VII actions are non-jurisdictional and "in the nature of statutes of limitations." Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997); Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007). Accordingly, we still apply the standard under Rule 12(b)(6).

Plaintiffs seek to amend their first amended complaint to add allegations of the following newly discovered factual information, as well as allegations that they were "applicants for employment" with the USDA. The proposed second amended complaint alleges that Dr. Darshan Padda, the Director of the UVI-CES through February, 1997, made nine Schedule A Cooperative Appointments during his tenure. Of these nine appointments, eight were made to white employees from the United States mainland. The ninth appointment was made to Rudolph Shulterbrandt, a former Virgin Islands Commissioner of Agriculture and person to whom Padda owed political and other favors. During this time period, twelve individuals, in addition to the nine individuals that were given appointments, were hired by the UVI-CES and eligible for Schedule A Cooperative Appointments. These twelve employees included eleven persons of African/Caribbean origin and a white, female employee married to an African/Caribbean man. According to plaintiffs, Padda did not inform these twelve employees of their eligibility for dual appointment, despite his obligation to do so.

In 1998, Kwame Garcia, Padda's replacement as UVI-CES Director, made a formal request to Dr. Colien Hefferan, Acting

-10-

Administrator of the USDA-CSREES, that the Schedule A dual appointment program be again extended to the Virgin Islands.[4] His request was denied and planned revisions to the Cooperative Extension Service employment manual were referenced as having a potential impact on Schedule A Cooperative Appointees. During this time, Hefferan was preparing a "Decision Memorandum" for the Secretary of Agriculture regarding the possible termination of the system of Schedule A dual appointments and the impact of such termination on those employees currently holding appointments who were then vested in the federal employment benefit programs. Plaintiffs allege that Hefferan knew that they would lose their opportunity to participate in the Schedule A dual appointment program and to receive the concomitant federal benefits if the planned revisions to the employment manual were accepted. The revisions to the employment manual were ultimately completed in May, 2002 in conjunction with the passage of the Farm Security and Investment Act of 2002. All Schedule A dual appointments were revoked at that time.

Defendants contend that the plaintiffs' motion to amend is futile because plaintiffs failed to exhaust their administrative remedies in connection with their claim that they were "applicants for employment" with the USDA. Defendants cite copies of the informal complaints filed by plaintiffs with the

---

4. As noted above, Garcia lacked the authority make Schedule A Cooperative Appointments in his position as Director of UVI-CES because he never received such an appointment and was not, therefore, a federal officer.

-11-

Employment Complaints Division, Office of Civil Rights for the USDA. These complaints state:

> I hereby assert a claim of discrimination on the basis of race, color, ethnicity, and place of origin against the United States Department of Agriculture in its employment practices as it related to the employees of the University of the Virgin Islands Cooperative Extension Service formerly eligible for dual government appointments in the Excepted Service of the Department of Agriculture and participation in certain federal employment benefits programs[.]

Plaintiffs further state:

> Despite the fact of my qualification for and eligibility for such dual government appointment in the Excepted Service and the federal employment benefits appurtenant thereto, the Department of Agriculture failed to notify me of such eligibility, failed to offer to me an election to so obtain such dual government appointment, or to allow me participation in the federal employment benefit programs described above. Upon information and belief, no employee of the University of the Virgin Islands Cooperative Extension Service, the overwhelming majority of whom are and were of African/Caribbean origin, was offered such dual government employment in the Excepted Service with the sole exception of the former State Director of the University of the Virgin Islands Cooperative Extension Service, who was of East Indian ancestry.

Plaintiffs' administrative complaints should be liberally construed. See Canavan v. Beneficial Fin. Corp., 553 F.2d 860, 864 (3d Cir. 1977). These complaints clearly set forth allegations of national origin discrimination by the USDA in their employment practices. Although plaintiffs do not use the term "applicant for employment," plaintiffs assert their

"eligibility for such dual government appointment." They further allege they were not offered such an opportunity with the USDA because of discrimination. Furthermore, the USDA understood their claim to include allegations that they were "applicants for employment" as evidenced by their May, 2006 letter stating that each plaintiff was not "a federal employee or an applicant for federal employment." Plaintiffs' complaints regarding discrimination despite their "eligibility for" employment with the USDA is a claim that they were "applicants for employment." The USDA was therefore on notice of the plaintiffs' complaints and had the opportunity to address and potentially resolve the issue. Plaintiffs exhausted their administrative remedies with respect to their claims that they were "applicants for employment." Thus, amendment of the first amended complaint with respect to Title VII is not futile in this regard.

Defendants further contend that aside from plaintiffs' failure to exhaust administrative remedies the motion to amend is futile because the amended Title VII claim fails to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants maintain that there is no evidence to support the plaintiffs' contention that they were "applicants for employment," nor any evidence that the UVI would have approved them for Schedule A Cooperative Appointments even were they informed of them. Furthermore, defendants stress that no statute or regulation creates in them a right to sue for

defendants' failure to offer them Schedule A Cooperative Appointments.

Defendants appear to confuse the standards under Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. Defendants advance arguments as to what the evidence establishes, as opposed to whether the allegations of the proposed second amended complaint state a claim for relief. Although the facts alleged in the complaint must be sufficient to show that the plaintiffs have a "plausible claim for relief," the complaint may not be dismissed under Rule 12(b)(6) "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); Phillips, 515 F.3d at 231. Under Twombly, we must accept as true all factual allegations in the complaint, draw all inferences from the facts alleged in the light most favorable to the plaintiff, and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Title VII states, in pertinent part:

(a) It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

The proposed second amended complaint clearly alleges that the defendants refused to extend them Schedule A Cooperative Appointments because of their African/Caribbean origin. Under Twombly, plaintiffs' proposed second amended complaint states a claim for national origin discrimination in violation of Title VII and therefore is not futile. Whether or not plaintiffs will succeed on their claims must await another day. We will grant the plaintiffs' motion for leave to amend their first amended complaint with respect to their claims for relief under Title VII of the Civil Rights Act of 1964. The defendants' motion for judgment on the pleadings (incorrectly denominated a motion to dismiss) or, in the alternative, for summary judgment with respect to plaintiffs' claim under Title VII in the first amended complaint will be denied as moot.

Plaintiffs' proposed second amended complaint also contains a claim for relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. Defendants oppose the motion of plaintiffs to file a second amended complaint on futility grounds with respect to this claim as well.

Section 601 of Title VI, 42 U.S.C. § 2000d, provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

> Section 604 of Title VI states:
>
> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of an employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d-3.

Defendants maintain that plaintiffs' claim under Title VI fails because the purpose of the Federal financial assistance under the Smith-Lever Act was the education of the public on subjects related to agriculture and *not* to provide employment.

The Smith-Lever Act states that the objective of the Federal financial assistance it grants is to "aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture, uses of solar energy with respect to agriculture, home economics, and rural energy, and to encourage the application of the same[.]" 7 U.S.C. § 341. To further this objective, it provides for the continuance or inauguration "in connection with the college or colleges in each State, Territory or possession, now receiving, or which may hereafter receive, the benefits of subchapters I and II [First Morrill Act and Second Morrill Act] of this chapter, agricultural extension work which shall be carried on in cooperation with the United States Department of Agriculture." 7 U.S.C. § 341.

In sum, the plain wording of the Smith-Lever Act establishes that its objective is to disseminate agricultural information to the people of the United States. It does not have as a primary objective to provide employment. 42 U.S.C. § 2000d-3.

Furthermore, the USDA-CSREES, now known as the National Institute of Food and Agriculture, is the government agency that administers the Federal funds under the Smith-Lever Act. Its reason for being is "to advance knowledge for agriculture, the environment, human health and well-being, and communities by supporting research, education, and extension programs in the Land-Grant University System and other partner organizations." http://www.csrees.usda.gov/about/background.html.

Accordingly, the plaintiffs' motion for leave to file a second amended complaint is futile to the extent that it asserts claims for relief under Title VI for discrimination in the employment practices of the USDA in connection with the Schedule A Cooperative Appointment program. We will deny the plaintiffs' motion for leave to file a second amended complaint containing a claim for relief under Title VI. The defendants' motion for judgment on the pleadings (incorrectly denominated a motion to dismiss) with respect to plaintiffs' claims under Title VI in the first amended complaint will be granted.

Finally, defendants have moved to join the UVI as a party pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. Rule 19(a) states:

> (a) Persons Required to Be Joined if
> Feasible.
>
> (1) *Required Party*. A person who is subject
> to service of process and whose joinder will
> not deprive the court of subject-matter
> jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court
> cannot accord complete relief among existing
> parties; or
>
> (B) that person claims an interest relating
> to the subject of the action and is so
> situated that disposing of the action in the
> person's absence may:
>
> (i) as a practical matter impair or impede
> the persons' ability to protect the interest;
> or
>
> (ii) leave an existing party subject to a
> substantial risk of incurring double,
> multiple, or otherwise inconsistent
> obligations because of the interest.

As the moving parties, the defendants bear the burden under Rule 19(a) to show why the absent party should be joined. Matlack Leasing, LLC v. Morison Cogen, LLP, No. 09-1570, 2010 WL 114883 (E.D. Pa. Jan. 13, 2010).

We must first determine whether the UVI should be joined as a "necessary party" under Rule 19(a). Gen'l Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). Under Rule 19(a), the "joinder of parties is compulsory or 'necessary' if their joinder is 'feasible.'" Id. If either (A) or (B) of subsection (1) is met, the party must be joined as a necessary party if feasible. Id.

Defendants maintain that UVI is a necessary party pursuant to Rule 19(a)(1)(A) because we will not be able to

-18-

accord complete relief among the existing parties in its absence. Defendants stress that the UVI is necessary for a determination of whether the plaintiffs could have participated in the Schedule A Cooperative Appointment program and received the corresponding federal benefits given that the Schedule A Cooperative Appointment program was a joint venture between the USDA and the UVI.  Participation in the program was dependent upon the UVI's agreement to fund a portion of the benefits received by Schedule A Cooperative Appointees.  For these reasons, defendants argue that the UVI is a necessary party.

Plaintiffs counter that the UVI will not be required to contribute to plaintiffs' participation in the federal employment benefit programs because the Schedule A Cooperative Appointment program is now terminated.  They further stress that the UVI did not participate in the alleged discrimination and should not be joined for this reason.

The employer costs of the Cooperative Appointees' participation in the federal employment benefit programs were subsidized by the USDA through Smith-Lever Act funds.  However, pursuant to 7 U.S.C. § 343(e)(4)(A), the Virgin Islands was required to "provide matching funds from non-Federal sources in an amount equal to not less than 50 percent of the formula funds distributed by the Secretary to each of the insular areas, respectively, under this section."  Given that both the UVI and the USDA were required to contribute to the federal benefits received by Cooperative Appointees, it appears we will be unable

-19-

to accord complete relief to the plaintiffs, who seek such retroactive federal employment benefits, without the UVI's presence in this lawsuit.  Accordingly, we will grant the motion of the defendants to join the University of the Virgin Islands as a necessary party in this action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.